

**ORDERED in the Southern District of Florida on July 27, 2020.**

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Case No. 19-10957-BKC-MAM |
| Lecio Lopes Mamedes,<br>        Debtor.<br>_____/ | Chapter 7 |
| Suely Del Franco,<br>        Plaintiff. | Adv. Proc. No. 19-01355-MAM |
| v. | |
| Lecio Lopes Mamedes,<br>        Defendant.<br>_____/ | |

## <u>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 26)</u>

THIS MATTER came before the Court upon *Plaintiff Suely Del Franco's Motion for Summary Judgment With Incorporated Memorandum of Law on Count XI Declaratory Relief Regarding Prepetition Settlement Agreement* (ECF No. 26) (the

"Motion") filed by Suely Del Franco ("Plaintiff") and the Response (ECF No. 39) filed by the defendant/debtor, Lecio Lopes Mamedes ("Defendant").

On January 7, 2020, the Court directed the parties to submit briefing on the Motion. Defendant filed her Response, Plaintiff filed a Reply (ECF No. 42), and both parties submitted a Joint Stipulation of undisputed facts (ECF No. 41). After considering all documents filed by both parties, the Court denies Plaintiff's request for summary judgment because material facts remain in dispute.[1]

**PROCEDURAL BACKGROUND AND COMPLAINT ALLEGATIONS**

Plaintiff's complaint (ECF No. 1) ("Complaint") shows that the genesis of this dispute arose approximately 5-6 years ago. In 2014, Plaintiff invested funds in Defendant's business, BRAZUSA Auto Store, Inc., a now-defunct Florida corporation ("BRAZUSA"). After the return allegedly promised upon the investment failed to materialize, the relationship between Plaintiff and Defendant deteriorated. Ultimately, the parties litigated their differences in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "State Court"), as Case No. 50-2016-CA-005556XXXXMB. The State Court granted partial summary

---

[1] After briefing closed upon the Motion, Plaintiff submitted approximately 1000 pages of exhibits (the "Supplemental Exhibits") to the Court as attachments to a transcript of Defendant's 2004 Examination (the "Transcript"). *See* ECF No. 47. Neither the Motion nor the Reply refer to any of these exhibits using pinpoint citations, nor do they refer to the 2004 Examination (which is itself approximately 200 pages long) by line or page. The 2004 Examination occurred approximately eight months prior to the filing of the Motion. Plaintiff presumably had access to the Transcript well in advance of filing the Motion.

Plaintiff has not supplied the Court with an explanation for her failure to provide the court with accurate pinpoint references to the Transcript and the Supplemental Exhibits in her request for relief. Because none of the initial or supplemental briefing submitted to the Court explains the specific relevance of literally hundreds of pages filed on the docket for this Adversary Proceeding, these documents are of limited value to the Court's present analysis.

2

judgment in favor of Plaintiff (the "Prior Judgment") on August 9, 2017. ECF No. 1-2, pp. 10-11. The parties do not dispute the validity of the Prior Judgment.

After participating in mediation, Plaintiff and Defendant entered into a prepetition settlement agreement (the "Settlement"), a copy of which is attached as Exhibit F to the Complaint. The parties do not dispute the validity of the Settlement, nor do they dispute that entry into the Settlement was an integral aspect of entry of two consensual final judgments in favor of Plaintiff, the first on August 14, 2018 in the amount of $120,000 against BRAZUSA (the "BRAZUSA Judgment"), and the second on September 11, 2018 in the amount of $120,000 against Defendant (the "Final Judgment").

The Final Judgment recounts that it is for claims based upon piercing the corporate veil, fraudulent inducement, unjust enrichment, conversion, civil theft, and breach of fiduciary duty. The Final Judgment also states that the State Court entered judgment against Defendant based on his willful and intentional conduct that resulted in financial injury to Plaintiff.

The Complaint asserts ten causes of action against Defendant. Those counts are:

 I      Non-dischargeability (§ 523(a)(6))

 II     Objection to Discharge (§ 727(a)(2)(A) and (B))

 III    Objection to Discharge (§ 727(a)(3))

 IV     Objection to Discharge (§ 727(a)(4)(A))

 V      Objection to Discharge (§ 727(a)(5))

3

VI     Veil-Piercing and Non-dischargeability (§ 523(a)(2)(A), (a)(4), and (a)(6))[2]

VII    Fraudulent Inducement and Non-dischargeability (§ 523(a)(2)(A) and (B))

VIII   Conversion and Non-dischargeability (§ 523(a)(6))

IX     Civil Theft and Non-dischargeability (§ 523(a)(4) and (6))

X      Breach of Fiduciary Duty and Non-dischargeability (§ 523(a)(2)(A), (a)(4), (a)(6))

XI     Declaratory Relief as to Settlement

The Motion seeks entry of judgment in favor of Plaintiff solely as to Count XI of the Complaint. This request, which is framed as a request for declaratory relief, seeks judgment regarding the impact of Defendant's bankruptcy case on the enforceability of the Settlement.[3]

The Motion seeks findings of fact and conclusions of law that: (i) the Settlement is deemed rejected, (ii) the Settlement is no longer enforceable by Defendant, (iii) Plaintiff may enforce a claim (the "Additional Claim") in excess of the amount provided for in the Settlement, the Final Judgment, and the BRAZUSA Judgment, and (iv) to the extent that the Court enters judgment in favor of Plaintiff as to discharge and/or dischargeability, Plaintiff may enforce the Additional Claim. By

---

[2] Several of the "Counts" in the Complaint are an amalgamation of several causes of action, asserting multiple legal theories as a basis for relief. In addition, the Complaint repeats legal theories across various Counts.

[3] Count XI refers to the Settlement without reference to or discussion of any particular paragraph or governing provision. The Court therefore presumes that Plaintiff does not contest the enforceability of any specific provision (by either party) of the Settlement, but instead contests the enforceability of the entire Settlement as a result of Defendant's bankruptcy case.

requesting summary judgment as to Count XI, Plaintiff seeks sweeping factual findings and legal conclusions pertinent to all Counts.

The Response acknowledges entry of the Final Judgment and existence of the Settlement. Rather than disputing the factual underpinnings of the Final Judgment, Defendant focuses upon whether: (i) the Settlement and Final Judgment collectively constitute an executory contract (which is a mixed question of fact and law) and (ii) Defendant breached the Settlement by failing to remit all required payments to Plaintiff (another mixed question of fact and law). In support of the second premise, Defendant asserts that Plaintiff refused to accept payments from Defendant for the months of September 2019 and December 2019 (the "Settlement Payments").

In the Reply, Plaintiff counters that she did not "refuse" the Settlement Payments, but rather the United States Postal Service (USPS) failed to deliver them.[4] Plaintiff further contends that it was Defendant's burden to rectify USPS's error. In addition, Plaintiff suggests that, although the Motion seeks summary judgment only as to Count XI, the Court should nonetheless *sua sponte* enter judgment as to other Counts of the Complaint.[5]

---

[4] Although the Court does not opine as to the reasonableness of Plaintiff's arguments at this time, the Court observes that the Settlement explicitly required delivery of payments to a post office box. ECF No. 1-2, Exhibit F (Settlement), at p. 1. And the exhibits attached to the Response indicate that the Settlement Payments were remitted to the correct post office box by the deadline set forth in the Settlement.

[5] Because it is clear from the Court's briefing order (ECF No. 31) that the Reply should contain only rebuttal to the arguments raised in the Response, the Court declines to entertain Plaintiff's request to broaden the scope of summary judgment.

5

The Joint Stipulation provides that (i) the Settlement and Final Judgment are intertwined, (ii) Defendant (improperly) listed the Final Judgment as a claim on his schedules, and (iii) although post-petition payments have been received, Plaintiff has elected not to apply these payments to Defendant's remaining obligation under the Final Judgment and Settlement. Joint Stipulation at ¶¶ 2-3, 6.[6]

## CONCLUSIONS OF LAW

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

### II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (citing Fed. R. Civ. P. 56(c)).

The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Diaz v. Amerijet Int'l, Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (quoting *Stewart v.*

---

[6] The remaining paragraphs of the Joint Stipulation recite statements and allegations otherwise disclosed in the Defendant's bankruptcy case or within this Adversary Proceeding.

6

*Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)) (internal quotation marks omitted); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Finally, the moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011).

### III. Genuine issues of material fact preclude entry of summary judgment

#### Is the Settlement an Executory Contract?

Defendant filed his chapter 7 petition on January 23, 2019. Pursuant to § 365(a)(1), the trustee in a chapter 7 case has the sole right to assume or reject an executory contract. If the chapter 7 trustee fails to assume the executory contract within 60 days after the petition date, then the executory contract is deemed rejected under § 365(d)(1).

The first question is, was the Settlement an executory contract? The Court must answer this question as an initial matter to properly assess the materiality of the parties' existing arguments and mutual representation that neither the Trustee nor Debtor has assumed the Settlement (or at least, not yet). Joint Stipulation, at 34-36. The determination of whether the Settlement qualifies as an executory contract is therefore crucial to the Court's analysis of summary judgment.

Under the traditional "Countryman" test, a contract is executory if "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy*, 57 MINN. LAW REV. 439, 460 (1973). The legislative history to § 365 indicates that the term "generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1978 U.S.C.C.A.N. 5963, 6303); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978 U.S.C.C.A.N. 5787, 5844); s*ee also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984) (although Code has no express definition, legislative history indicates the scope of "executory contract").

Other courts have relied upon a "functional analysis" test for determining whether an agreement is an executory contract. *See In re Arrow Air, Inc.*, 60 B.R. 117, 121-122 (Bankr. S.D. Fla. 1986). This analysis focuses on whether the agreement would benefit or burden the estate. *Id*.; *see also Sipes v. Gen. Dev. Corp. (In re Gen. Dev. Corp*.), 177 B.R. 1000, 1011-13 (S.D. Fla. 1995), *aff'd per curium*, 84 F.3d 1364 (11th Cir. 1996). If no benefit can be derived for the bankruptcy estate by assuming or rejecting the agreement, then the agreement is not executory.

Several courts have applied both of these tests when determining whether a settlement agreement is an executory contract. In *In re Peralta Food Corp.*, Case No. 07-16508-BKC-AJC, 2008 WL 190503 (Bankr. S.D. Fla. Jan. 18, 2008), the bankruptcy court considered both the Countryman test and the functional analysis

test to conclude that a settlement agreement providing for the plaintiff to stay execution on a final judgment in exchange for a stream of payments was not an executory contract. *Id.* at *3-7; *see also Gencor Indus., Inc. v. CMI Terex Corp. (In re Gencor Ind., Inc.)*, 298 B.R. 902, 913 (Bankr. M.D. Fla. 2003) (mere right to payment, alone, is not enough to make a settlement agreement an executory contract).

### The Settlement is Not an Executory Contract.

The Settlement provided for Defendant to make a stream of payments to Plaintiff monthly from September 1, 2018 through January 1, 2033, by mailing a money order, cashiers' check, or certified bank check to Plaintiff at a designated post office box by no later than the 2nd day of each month. The total payments due under the Settlement are $64,800. Assuming those payments are made, Plaintiff has an obligation to file a satisfaction of the Final Judgment in the amount of $120,000. The Settlement, however, also includes a mutual release of the parties, assuming Defendant completes performance of all payment obligations under the Settlement.

Based upon a review of the Settlement and applicable caselaw, the Court concludes that the Settlement is not an executory contract under either the Countryman test or the functional analysis test.

The Settlement merely provides for a stream of payments to be made by Defendant to Plaintiff. This factor in isolation is not enough to deem the contract executory under the Countryman standard. *Gencor*, 298 B.R. at 913. Although the Settlement requires Plaintiff to file a satisfaction of the Final Judgment upon receipt of all payments due under the Settlement, this requirement does not appear to be a

9

material obligation, particularly since the Settlement contains a self-effectuating release by Plaintiff. *C.f. Enter. Energy Corp. v. United States (In re Columbia Gas System Inc.)*, 50 F.3d 233, 242 (3rd Cir. 1995) (determining releases in settlement constituted condition precedent rather than a continuing duty). The Court therefore concludes that application of the Countryman test reveals that the Settlement is not executory.

Moreover, the Settlement yields no discernible benefit to the estate. The bankruptcy case is a no asset case without a distribution to unsecured creditors. The impact of Plaintiff's claim being in a lesser amount, due to the operative terms (and Debtor's potential reaffirmation) of the Settlement, neither benefits nor burdens the estate. As a result, the Settlement is non-executory under the functional analysis test.

Based upon the Court's determination that the Settlement is not an executory contract, the Court denies as moot Plaintiff's request in Count XI for a finding that the Settlement has been rejected. If the Settlement is not an executory contract, the concepts of assumption and rejection simply do not apply to the Settlement.

### **Defendant's Right to Enforce the Settlement is Unclear.**

The Court now turns to the second request made by Plaintiff in Count XI, which is for the Court to determine whether the Settlement is enforceable by Defendant.

The manner by which a debtor agrees to perform under a pre-petition agreement that the counterparty would otherwise be prohibited from seeking to

10

enforce is through entry into and court approval of a reaffirmation agreement. 11 U.S.C. §§ 524(c), (d), and (k). Collectively, those subsections require a debtor to agree to reaffirm the debt prior to the entry of an order of discharge in the debtor's chapter 7 case and to enter into a written agreement with the creditor that contains numerous statutorily proscribed disclosures. The debtor then files the reaffirmation agreement with the Court and seeks approval of it. As part of that process, counsel to a represented debtor must analyze and conclude that the debtor's agreement to perform the pre-petition obligation will not constitute an undue hardship on the debtor; that is, based upon the projected income and expenses of the debtor, the debtor will have sufficient disposable income to be able to pay the reaffirmed obligation.

The Court has not entered a discharge in Defendant's chapter 7 case because the relief sought by Plaintiff includes denial of discharge under 11 U.S.C. § 727. The time period within which Defendant can propose a reaffirmation agreement to Plaintiff and seek to enforce the Settlement therefore has not yet expired. Assuming Defendant wishes to reaffirm his obligations under the Settlement, Defendant can still enter into a timely reaffirmation agreement with Plaintiff.

This analysis raises the question of whether Defendant has completely performed under the Agreement. Under applicable non-bankruptcy law, a material breach by one party to a contract excuses performance by the non-breaching party. *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014). If Defendant failed to properly perform his obligations under the Settlement, then

11

Plaintiff would be justified in refusing to perform by accepting additional payments under the Settlement, and Defendant could not seek to enforce the Settlement.

The Motion acknowledges that, except for two months in which Plaintiff claims not to have received payments, Defendant has continued to remit Settlement payments post-petition. The Response asserts that Defendant timely mailed the missing Settlement Payments to Plaintiff's post office box and provides evidentiary support for this contention in the form of an affidavit and Certified Mail Receipts from the United States Post Office. Defendant failed, however, to clarify whether the payment contained in the transmittals for the months of September 2019 and November 2019 were in the requisite form of payment required by the Settlement, i.e. cashier's check, money order, or certified bank check. Without this clarification, the Court is unable to conclusively determine that Defendant has properly performed under the Settlement which, along with a reaffirmation agreement, would enable Defendant to enforce the Settlement against Plaintiff. The absence of these and other material facts prevent the Court from granting summary judgment on Count XI at this time.

Accordingly, after reviewing the record to date, the Court finds that genuine disputes as to material facts exist. Specifically, the Court finds that the Motion, Response, Reply, Joint Stipulation, and the exhibits attached to these filings do not clarify whether Defendant is fully compliant with the Settlement and whether Plaintiff is justified in refusing to accept payments from Defendant. Moreover, in the

absence of a timely reaffirmation agreement, the Court is unable to determine whether the Settlement is enforceable.

Defendant's attempt to remit the missing Settlement Payments post-petition indicates a willingness to perform under the Settlement. Defendant has also suggested that he did not default under the Settlement because of his timely transmittal of an envelope which purportedly contained the missing Settlement Payments. However, without advising the Court of the content of those envelopes that purportedly contained the missing Settlement Payments, the Court is unable to determine whether Defendant has breached the Settlement.

The factual basis and purported justification for Plaintiff's refusal to perform under the Settlement is decidedly less certain. Without further specifically delineated factual support, the Court cannot determine whether Plaintiff's refusal to apply the post-petition payments under the Settlement resulted in Plaintiff's own breach or anticipatory repudiation of the Settlement, thereby potentially relieving Defendant of the duty to perform. And, if this is the case, it is even less clear that Plaintiff is or may be entitled to assert the Additional Claim.

The existence of these and other mixed questions of disputed fact and law therefore require denial of summary judgment. Upon completion of all pending discovery, the parties shall proceed to trial.[7]

---

[7] The Court would be remiss if it did not comment on the troubling nature of this proceeding. Plaintiff acknowledged this in her Reply by stating that "what is unusual about this bankruptcy case is the Debtor Defendant [sic] wants to enforce rather than discharge his obligations under the prepetition Settlement Agreement…." In fact, Defendant has evidenced he wants to perform under the Settlement by continually remitting payments post-petition to Plaintiff. Plaintiff seeks a determination that Defendant's obligations under the Settlement persist despite the filing of Defendant's bankruptcy case. It seems as if Defendant is in raging agreement with that result. The Court therefore strongly

## ORDER

With the Court being fully advised in the premises and for the reasons discussed above, the Court hereby **ORDERS** that the Motion is **DENIED**.

###

Copy to:

Tarek Kiem, Esq.

*Attorney Kiem is directed to serve this Order upon all parties to this Adversary Proceeding and file a conforming certificate of service.*

---

encourages the parties to participate in mediation or a judicial settlement conference to reach closure on the issues raised in this proceeding.